# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

COVENANT INVESTMENT FUND LP,
 a Delaware Limited Partnership
and ALAN L. LUCAS, operating manager of
Prosapia Capital Management, LLC, a Wyoming LLC,
the general partner of
Covenant Investment Fund LP,

        Plaintiffs,

    vs.                              Case No.  14-C-76

TOM MILLER, Attorney General of Iowa
and
J.B. VAN HOLLEN, Attorney General of
Wisconsin,

        Defendants

---

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION AGAINST DEFENDANTS' UNCONSTITUTIONAL APPLICATION OF CRIMINAL STATUTE

---

    Plaintiffs Covenant Investment Fund LP ("Covenant") and Alan L. Lucas ("Lucas"), who is operating manager of Prosapia Capital Management, which is the general partner of Covenant, pursuant to 28 U.S.C. §§ 2201-02, and by and through their attorneys Robert B. McMonagle of Lane & Waterman, LLP, and Brian T. Fahl of Fahl Law Office, LLC, file this complaint seeking a declaration

1

from the Court and an order both preliminarily and permanently enjoining Tom Miller ("Miller"), Attorney General of Iowa from taking civil action or enforcing criminal charges for theft and misappropriation under Iowa Code §§ 706A.1, 706A.2(4), 706A.4, 714.1(2) and 714.2(1) against Alan L. Lucas in relation to the internal affairs of Covenant Investment Fund LP, and further enjoining J.B. Van Hollen ("Van Hollen"), Wisconsin Attorney General from enforcing the extradition statute, Wis. Stat. § 976.05.

## INTRODUCTION

In August of 2007 Covenant Investment Fund LP, a Delaware Partnership was created pursuant to the laws of the State of Delaware. Later that year, Alan Hansen became a limited partner of Covenant, agreeing to the terms and conditions of the partnership agreement. Due to poor management of Covenant, by 2009, Covenant began to realize financial losses and the partnership was in distress.

Prosapia Capital Management LLC ("Prosapia"), managed by Alan L. Lucas, became Covenant Investment Fund LP's General Partner in 2010. Prosapia took over Covenant's assets with the purpose of realigning Covenant's assets and streamlining Covenant's various holdings into one large real estate holding. Prosapia intended to return Covenant to profitability for its limited

2

partners. One of Covenant's limited partners, Alan Hansen, disagreed with Prosapia's plans for Covenant and questioned Lucas's management of Prosapia. Instead of initiating a derivative action in the State of Delaware as required by Covenant's partnership agreement and longstanding principles of corporate law, Hansen petitioned the State of Iowa to intervene on his behalf. In violation of the Full Faith and Credit Clause and the Commerce Clause of the United States Constitution, the State of Iowa sought to regulate the internal affairs of a Delaware partnership -- that has no contacts to the State of Iowa -- when it initiated criminal proceedings against Alan Lucas, the Operating Manager Covenant's General Partner, Prosapia. The State of Iowa's attempt to regulate the internal affairs of a foreign company is contrary to ARTICLE IV, SECTION 1 and ARTICLE 1, SECTION 8, CLAUSE 3 of the UNITED STATES CONSTITUTION and gives rise to the instant action.

## PARTIES, JURISDICTION, AND VENUE

1.       Covenant Investment Fund LP, is a Delaware limited partnership, organized under the laws of the State of Delaware. Covenant Investment Fund was formed in August, 2007.

2.      Alan L. Lucas is Operating Manager of Prosapia Capital Management, LLC, a Wyoming LLC, which is the General Partner of Covenant Investment Fund LP.

3.      Tom Miller is the Attorney General for the State of Iowa.  The Attorney General of the State of Iowa is charged with enforcing Iowa's laws.

4.      J.B. Van Hollen is the Attorney General for the State of Wisconsin. The Attorney General of the State of Wisconsin is charged with enforcing Wisconsin's laws.

5.      The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because the case involves the unconstitutional application of Iowa's civil and criminal statutes as applied to Covenant and Lucas in violation of the commerce clause and full faith and credit clause.

6.      Proper venue exists in this district under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

7.      The State of Iowa has claimed jurisdiction over certain actions taken by Mr. Lucas while acting in his capacity as Operating Manager of Prosapia, which is the General Partner of Covenant Investment Fund LP.

4

8.     On May 17, 2010, Prosapia Capital Management LLC, a Wyoming LLC, purchased 100 percent of the membership of Covenant Asset Management LLC, an Iowa LLC, which was the General Partner of Covenant Investment Fund LP.

9.     Covenant Asset Management LLC's only assets were $1,600 and partnership interest in Covenant Investment Fund LP, a Delaware limited partnership.  These assets were transferred to Prosapia Capital Management LLC when Covenant Asset Management LLC was administratively dissolved on August 6, 2010.

10.     Prosapia Capital Management LLC became a limited and general partner of Covenant Investment Fund LP.

11.     Prosapia Capital Management LLC was a wholly-owned subsidiary of Prosapia Financial LLC, a Delaware LLC.

12.     Prosapia Capital Management LLC and Prosapia Financial LLC are manager-managed LLCs, not member-managed LLCs.

13.     Alan Lucas had a member interest in Prosapia Financial LLC and is the Operating Manager of that company.

14.     In early June 2010, Alan Lucas transferred Phalanx Technology Holding LLC's assets to Covenant Investment Fund LP in exchange for a

5

partnership interest. Phalanx Technology Holding LLC is a Delaware LLC. This transfer made Phalanx Technology Holdings LLC, A Delaware LLC, the largest limited partner of Covenant Investment Fund LP. Alan Lucas was the operating manager of Phalanx Technology Holdings LLC.

15.     Thus, as of June 2010, by operation of his membership in Phalanx, Lucas became the largest limited partner of Covenant.  And by his membership in Prosapia, he became the General Partner and Operating Manager of Covenant Investment Fund LP.

16.     When Prosapia became General Partner of Covenant Investment Fund LP in 2010, Covenant had approximately $190,000 in its bank account and a number of limited partnership holdings, all of which were outside of the State of Iowa.

17.     Prosapia began the process of consolidating Covenant's holding and used some of that approximate $190,000 to conduct an audit, hire contractors, and purchase a corporate vehicle.

18.     The vehicle was registered to Phalanx Technology Holdings, the entity with the largest limited partnership interest in Covenant Investment Fund LP.  The automobile was purchased in November 2010 and was used for Covenant's corporate travel across the Midwest.  This was not Lucas's personal

vehicle. In fact, he never used the vehicle until April, 2011, approximately three weeks prior to the vehicle's seizure by the state of Iowa.

19.     In June of 2011, the State of Iowa charged Lucas with theft and ongoing criminal conduct based upon the above corporate expenditures.

20.     According to the State of Iowa, the theft claims rely on the use of funds of one entity managed and operated by Mr. Lucas to pay the bills of another entity managed and operated by Mr. Lucas, and the use of funds of an entity managed and operated by Mr. Lucas to acquire an automobile to be used as an investment and as an asset of Phalanx Technology Holdings, a Delaware LLC.  The State of Iowa claims the use of these funds was inconsistent with or a denial of the owner's rights in the property.

21.     Lucas's criminal trial began on Monday, October 21, 2013.  He attempted adjourn the trial because he had secured new counsel that was familiar with corporate law, which was central to his defense.  The Iowa court denied Lucas's requests for an adjournment and substitution of counsel.

22.     After the conclusion of his first day of trial, Lucas traveled to Pleasant Prairie, Wisconsin where he maintained a residence with his minor son and where all of his corporate documents were kept.

23.     On October 22, 2013, due to a number of factors, Lucas did not show up for the second day of his trial in Iowa. Lucas had informed his trial lawyer that he would be delayed. Subsequently, he was arrested in Kenosha County, Wisconsin, where he is currently being held on an extradition warrant.

24.     Lucas's trial continued without him and he was convicted in absentia on October 23, 2013.

25.     The State of Iowa is seeking to have Mr. Lucas extradited to answer for Iowa's charges of theft in the first degree and ongoing criminal conduct

26.     Wisconsin resident, Alan Lucas, is presently being held in the Kenosha County Pretrial Center awaiting an extradition hearing. The extradition hearing is scheduled for February 10, 2014.

## CLAIM FOR RELIEF

27.     Covenant Investment Fund LP is operated by partnership agreement registered with the State of Delaware. (Exhibit A). The actions of Prosapia at all times were governed and allowed by Covenant Investment Fund's Delaware partnership agreement.

28.     According to Section 14.05 of Covenant Investment Fund's Partnership agreement, "this agreement shall be construed in accordance with and governed by the laws of the State of Delaware." (Exhibit A)

29.    Under Delaware law, a partner of a limited partnership or an assignee of a partnership interest is bound by the partnership agreement whether or not the partner or assignee executes the partnership agreement.  Del Code § 17-101(12).

30.   Likewise, under Iowa law, the laws of the state or other jurisdiction under which a foreign limited partnership is organized govern relations among the partners of the foreign limited partnership and between the partners and the foreign limited partnership and the liability of partners as partners for an obligation of the foreign limited partnership. Iowa Code § 488.106; *See also* Iowa Code § 488.901.

31.    Thus, under both Delaware and Iowa law, partners of Covenant are governed and bound by the terms and conditions of the partnership agreement. According to that agreement, all partners agree that Delaware law shall control any action regarding the partnership.

32.    Pursuant to Delaware law, the property of a partnership does not belong to any investor, but belongs to the partnership as a whole:

    A.     Delaware:  Title 6 § 15-201. Partnership as entity.

        (a) A partnership is a separate legal entity which is an entity distinct from its partners

    B.     Delaware:   Title 6 § 15-203. Partnership property.

Unless otherwise provided in a statement of partnership existence or a statement of qualification and in a partnership agreement, property acquired by a partnership is property of the partnership and not of the partners individually.

C.     Delaware:  Title 6 § 15-204.  <u>When property is partnership property.</u>

(a)     Property is partnership property if acquired in the name of:

(1)     the partnership; or

(2)     one or more persons with an indication in the instrument  transferring title to the property of the person's capacity as a partner or  of     the existence of a partnership but without an indication of the name of the partnership.

(b)     Property is acquired in the name of the partnership by a transfer to:

(1)     the partnership in its name; or

(2)     one or more persons in their capacity as partners in the partnership, if the name of the partnership is indicated in the  instrument transferring title to the property.

(c)     Property is presumed to be partnership property if purchased with partnership assets, even if not acquired in the name of the partnership or of one or more persons with an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership.

D.     Delaware: Title 6 § 15-501. <u>Partner Not Co-Owner of Partnership Property</u>.

10

Unless otherwise provided in a statement of partnership existence and in a partnership agreement, a partner is not a co-owner of partnership property and has no interest in specific partnership property.

E.    Title 6 § 17-701. <u>Nature of partnership interest.</u>
A partnership interest is personal property. A partner has no interest in specific limited partnership property

33.    Therefore, under Delaware law the expenditures made by Prosapia, which Iowa characterizes as misappropriated funds, were the property of the partnership as a whole and not the property of any one of the partnership's individual limited partners.

34.    Pursuant to Section 302 of the Partnership Agreement, Alan Lucas, as Operating Manager of Prosapia, the General Partner of Covenant, has the authority to control all or any assets of Covenant. (Exhibit A).

35.    "The derivative form of action permits an individual shareholder to bring 'suit to enforce a corporate cause of action against officers, directors, and third parties.'  Devised as a suit in equity, the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and manager.'"  *Kamen v. Kemper Financial Service, Inc. et al*, 500 U.S. 90, 95 (1991)(citations omitted).

36.     If Alan Hansen, a resident of Iowa and a limited partner of Covenant since 2007 (three years before Prosapia became the General Partner), believes that Prosapia misappropriated partnership funds, the appropriate action is for him to file a derivative action on behalf of the partnership in the State of Delaware, or contact the Office of the Attorney General for the State of Delaware to request that the Attorney General pursue an action behalf of that Delaware partnership against Prosapia. *See Id*.  As a limited partner, under Covenant's partnership agreement and Delaware law, Hansen had no right to seek redress in Iowa.

37.     Under Delaware law, The State of Iowa is not a proper plaintiff in a derivative action. Del Code § 17-1002.  Thus, if the Iowa Attorney General's Office that believes that Prosapia misappropriated funds belonging to a Delaware partnership, the only appropriate action would be for it to contact the Office of the Attorney General in Delaware. *See, e.g., Vantage Venture Partners v. EXAMEN, Inc.*, 871 A.2d 1108, 1113 (Del. 2005).

38.     According to Section 14.06 of the Partnership Agreement, Any action, proceeding or dispute arising hereunder, or concerning the subject matter of this Agreement must be commenced, prosecuted and adjudicated in the state or federal courts located in the State of Delaware. (Exhibit A).

39.     When Alan Hansen, a limited partner of Covenant, who has specific rights and remedies under that partnership agreement, asked the State of Iowa to intervene into the internal partnership dispute, he violated the terms of Covenant's partnership agreement, which Hansen entered into long before Prosapia became involved in Covenant.  Again, under the terms of that agreement, any legal challenges to the management of Covenant must be initiated in Delaware.

40.     "It has long been settled doctrine that a court – state or federal – sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another State but will leave such controversies as to such matters to the courts of the State of the domicile. *Rogers v. Guaranty Trust Co.*, 288 U.S. 123, 130 (1933).

41.     The Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State. *Edgar v. MITE Corp.*, 457 U.S. 624, 642-43 (1982).

42.   Covenant Investment Fund LP was not transacting business in the State of Iowa according to the Iowa Code:

488.903  Activities not constituting transacting business.

1.    Activities of a foreign limited partnership which do not constitute transacting business in this state within the meaning of this article include all of the following:

*a.*  Maintaining, defending, and settling an action or proceeding.

*b.*  Holding meetings of its partners or carrying on any other activity concerning its internal affairs.

*c.*  Maintaining accounts in financial institutions.

*d.* Maintaining offices or agencies for the transfer, exchange, and registration of the foreign limited partnership's own securities or maintaining trustees or depositories with respect to those securities.

*e.*  Selling through independent contractors.

*f.*  Soliciting or obtaining orders, whether by mail or electronic means or through employees or agents or otherwise, if the orders require acceptance outside this state before they become contracts.

*g.* Creating or acquiring indebtedness, mortgages, or security interests in real or personal property.

*h.* Securing or collecting debts or enforcing mortgages or other security interests in property securing the debts, and holding, protecting, and maintaining property so acquired.

14

*i.* Owning, without more, real or personal property.

*j.* Conducting an isolated transaction that is completed within thirty days and is not one in the course of similar transactions of a like manner.

*k.* Transacting business in interstate commerce.

2.    For purposes of this article, the ownership in this state of income-producing real or tangible personal property, other than property excluded under subsection 1, constitutes transacting business in this state.

43.    Covenant Investment Fund LP did not conduct or "transact" business that would be under the authority of the State of Iowa. Nor does Covenant put any goods or services into the stream of commerce in Iowa. Rather, Covenant Investment Fund LP is a company engaged primarily in Interstate Commerce outside of the State of Iowa. Moreover, because this case involves entirely the internal affairs of Covenant, there are no commercial ties to Iowa.

44.    Under the commerce clause a state has no interest in regulating the internal affairs of a foreign corporation. *Edgar v. MITE Corp*, 457 U.S. 624, 645-46 (1982). "Any attempt to 'directly' assert extraterritorial jurisdiction over persons or property would offend sister States and exceed the inherent limits of the State's power." *Id*. at 643.

45.     Because the funds in question belong to a Delaware partnership and because the partnership did not conduct any business within the State of Iowa, the Attorney General for the State of Iowa cannot attempt to punish Mr. Lucas for Prosapia's actions as General Partner and Operating Manager of Covenant. That decision is for no one but the State of Delaware.

46.     "As a general matter, the law of the state of incorporation normally determines issues relating to the internal affairs of the corporation.  Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation."  *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983)(citations omitted).

47.     "The Internal Affairs Doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." RESTATEMENT (SECOND) OF CONFLICT OF LAWS SECTION 302, Comment b, pgs. 307-08 (1971). *Edgar v. MITE Corp, et al.*, 457 U.S. 624, 645 (1982)

48.     In *McDermott Inc. v. Lewis,* 531 A2d 206, 217 (Del. 1987), the Supreme

Court of Delaware stated, "[g]iven the significance of these considerations,

application of the internal affairs doctrine is not merely a principle of conflicts

law.  It is also one of serous constitutional proportions – under due process, the

commerce clause and the full faith and credit clause – so that the law of one state

govern the relationships of a corporate to its stockholders, directors and officers

in matters of internal corporate governance;" *see also, Vantage Venture Partners v.*

*EXAMEN, Inc.,* 871 A.2d 1108, 1113 (Del. 2005)(under internal affairs doctrine,

Delaware Supreme Court refused to allow California law be used to examine

internal affairs of company organized in Delaware); *CTS Corp. v. Dynamics Corp.*

*of America,* 481 U.S. 69, 89 (1987)("No principle of corporation law and practice is

more firmly established than a State's authority to regulate domestic

corporations.").

49.     Here, the State of Iowa seeks to punish Mr. Lucas for actions

undertaken in the management and operation of several Delaware entities.  It

claims that Lucas misappropriated property inconsistent with or denial of the

owner's rights in the property.  Since the property in question belonged to a

Delaware entity, it is for the Delaware courts using Delaware law to determine if

such an act occurred.  Additionally, since none of those entities conducted any

business in Iowa, the State of Iowa is completely without any jurisdiction to

17

proceed here. Any attempt to punish Mr. Lucas for conduct as contained in the Trial Information violates the Commerce Clause of the United States Constitution. Again, under the partnership agreement, the limited partners have agreed to abide by the laws of Delaware. So, even if Iowa's claims are assumed to be valid, redress can only be achieved in Delaware courts under Delaware law.

50. Indeed, a State's concern with potential interference in the administration of its criminal laws is of lesser dimension when an attack is made upon the constitutionality of a state statute as applied. *Steffel v. Thompson*, 4145 U.S. 452, 474 (1974).

51. Moreover, the State of Delaware abides by the business judgment rule. The business judgment rule establishes "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Westmoreland County Employee Retirement System v. Parkinson*, 727 F.3d 719, 725 (7th Cir. 2013)(quoting *Gantler v. Stephens*, 965 A.2d 695, 705 (Del.2009)).

52. The business judgment rule is "an acknowledgement of the managerial prerogatives of Delaware directors," *id*. at 812, and directors

ordinarily enjoy wide latitude in managing a corporation's affairs. S*ee In re Caremark Intern. Inc. Derivative Litigation*, 698 A.2d 959, 967 (Del.1996)(emphasizing that "wrong" or "stupid" board decisions generally "provide[ ] no ground for director liability").

53.     But even if Prosapia's actions fell outside of the business judgment rule, under the terms of Covenant's partnership agreement, any legal challenge must be brought in the State of Delaware.

54.     In sum, the legality of how rent was paid and/or how the vehicle registered by Phalanx Technology Holdings was purchased is a matter for the courts in the State of Delaware to decide. *Edgar v. MITE* at 645-46.  The Supreme Court has clearly stated that no state has an interest in regulating the internal affairs of foreign corporations. *Id*. at 646.  Under this settled precedent, Iowa has no interest in regulating the internal affairs of Covenant and for it to attempt to do so violates the commerce clause and full faith and credit clause of the U.S. Constitution. *Id*.

# PRAYER FOR RELIEF

Alan Lucas is awaiting extradition, with a hearing scheduled for February 10, 2014, because the State of Iowa violated the full faith and credit and commerce clauses of the United States Constitution when Iowa initiated a criminal prosecution of Lucas for actions undertaken as Operating Manager of the General Partner of Covenant. "An individual who is imminently threatened with prosecution for conduct that he believes is constitutionally protected should not be forced to act at this peril." *Edgar v. MITE* at 651.

**WHEREFORE** Covenant Investment Group, LP and Alan L. Lucas request the Court enter:

1.      A declaration and an order enjoining the State of Iowa from enforcing its criminal and civil statutes against Lucas for his actions as General Partner and Operating Manager of Covenant because those statutes violate the Commerce Clause as applied to Lucas.

2.      A declaration and an order enjoining the State of Wisconsin from enforcing its extradition statute against Lucas because the State of Iowa's criminal prosecution of Lucas violates the Commerce Clause.

3.      Any other relief this Court deems equitable or just under the circumstances.

Dated at Milwaukee, Wisconsin, this 22nd Day of January 2014.

Respectfully submitted,

**/s/ Brian T. Fahl**
Brian T. Fahl, Bar # 1043244
Fahl Law Office, LLC
PO. Box 26442
Wauwatosa, WI 53226
Telephone: (414) 604-6771
Email: bfahl@fahllawoffice.com

IOWA COUNSEL
Robert B. McMonagle
Lane & Waterman, LLP
220 N. Main Street, Suite 600,
Davenport, IA 52801
Phone: (563) 333-6616
Email: rmcmonagle@l-wlaw.com